IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


QJR, LLC                                    PLAINTIFF

VS.                                         CIVIL NO. 1:24CV00383

SECURIX, LLC, ET AL                         DEFENDANT



MOTION HEARING

BEFORE THE HONORABLE TAYLOR B. MCNEEL
UNITED STATES DISTRICT JUDGE

JANUARY, 27, 2025
GULFPORT, MISSISSIPPI

APPEARANCES:

FOR THE PLAINTIFF:
 JAKLYN L. WRIGLEY, ESQUIRE
 NICHOLS WRIGLEY, PLLC
 929 WASHINGTON AVENUE
 OCEAN SPRINGS, MISSISSIPPI  39564



FOR THE DEFENDANT:
 ALBERT RALPH JORDAN, IV
 HEALY & JORDAN, PLLC - GULFPORT
 1323 28TH STREET, SUITE A
 GULFPORT, MISSISSIPPI  39501




REPORTED BY:  SHERRI L. PENNY, RPR, FCRR
              Mississippi CSR #1609
              2012 15th Street, Suite 403
              Gulfport, Mississippi  39501
              (228) 563-1781

1      **THE COURT:**  Madam Clerk, will you please call the

2  case.

3      **DEPUTY CLERK:**  QJR, LLC versus Securix, LLC and

4  Jonathan Miller civil case number 1:24cv383 set for motion

5  hearing.

6      **THE COURT:**  Would counsel please make their

7  appearances for the record, beginning with counsel for the

8  plaintiff.

9      **MS. WRIGLEY:**  Yes, Your Honor.  Jaklyn Wrigley on

10  behalf of QJR, LLC.

11      **MR. JORDAN:**  Your Honor, Al Jordan on behalf of

12  Mr. Miller, as well as Securix, LLC.

13      **THE COURT:**  Thank you.  This matter is set for a

14  hearing on plaintiff's motion to remand.  I have reviewed the

15  briefs in this case.  Of course, I have reviewed a lot of the

16  pleadings in this case leading up to the status conference, I

17  have also reviewed the response in opposition since the status

18  conference, I have reviewed the reply brief that was filed very

19  recently, so I am very up to speed on this case.

20      Obviously, there's two primary issues in terms of the

21  request to remand.  Number 1, is the amount in controversy met,

22  can the defendants meet their burden to demonstrate the amount

23  in controversy is met; and secondarily, is there a waiver.  I

24  do view the amount in controversy is the bigger issue, the

25  primary issue.  That was the lead argument put forward by the

1    plaintiff, and I do view that as the bigger issue, the amount

2    in controversy.

3        Now, how I view the amount in controversy is this:   I

4    believe, obviously, the law requires that jurisdiction be

5    determined at the time of removal.  And so the amount in

6    controversy had to be established at the time of removal to be

7    in excess of $75,000.  The law says I am to include certain

8    things in that calculation on how to get to $75,000, if there

9    is $75,000 at stake, or if there is in excess of $75,000 at

10   stake.

11       The parties have identified in their briefing the value of

12   the object of the litigation is one of the things for me to

13   consider.  Of course, the parties are litigating over the

14   dissolution of Securix Mississippi, LLC.

15       Now, I do view the value of the object of the litigation

16   with regard to the dissolution as actually the value of the

17   50 percent share of the various parties, all right?  So that's

18   the starting point of one of the things that I am to determine

19   for valuation purposes.  What is the valuation of Securix,

20   Mississippi, LLC, and then you reduce that by half because the

21   defendants, essentially, have 50 percent ownership and the

22   plaintiff, essentially, has 50 percent ownership.  That's what

23   the case law tells me I am to do in these dissolution types of

24   situations, I look at the ownership share, okay.

25       So that's my understanding of the case law.  I first

1    understand the value of the company, and then I look at the

2    50 percent ownership share of that company because that's how

3    much is at stake for the plaintiff and for the defendants.

4    Then I add on top of that valuation the request for monetary

5    damages.  And those include compensatory damages, those include

6    punitive damages, and those include attorneys' fees and costs.

7    And I need to understand how you would get to attorneys' fees

8    and costs.  I do understand the allegation of defamation

9    related compensatory and punitive damages.  I understand that.

10   And then there is this kind of allegation that's, I think, in

11   paragraph 3 of the request for relief that seems to be like a

12   breach of contract type of claim, potentially, for relief as

13   well, and I need to have a little bit more of an understanding

14   of that.

15        So I understand, I think, generally the parties'

16   arguments.  I believe I have an understanding of the law as

17   best as I can get to it, but I do want the parties to be able

18   to present their arguments, as I wanted to kind of set forth

19   some preliminary things of where I think we should be headed.

20        I do want to focus primarily on amount in controversy as

21   opposed to waiver.  I am not going to prohibit you all from

22   arguing about waiver, but I do think the primary issue is

23   amount in controversy.

24        So it is the plaintiff's motion, but it's also the

25   defense's burden.  Even still, it is the plaintiff's motion.

1    So Ms. Wrigley, I am going to give you the opportunity to go

2    first.  You can present any legal argument that you would like

3    to present at this time, and any additional evidence that you

4    want to put forward at this time.  And then you will be allowed

5    to respond, of course.  And you can present any argument that

6    you would like to present, Mr. Jordan, at that time and any

7    evidence that you want to present, whether it's witness

8    testimony or otherwise.  And then Ms. Wrigley, you can argue in

9    rebuttal.  Ms. Wrigley, are you ready to proceed?

10              **MS. WRIGLEY:**  Yes, Your Honor.

11        If it may please the Court.  You really sort of laid it

12    out for us.  I am not sure if Mr. Jordan and I even are

13    necessary.  I think Your Honor has done a great job bringing

14    himself up to speed, which I, as a litigator in your courtroom,

15    I do appreciate.

16        This case is one where the Court issues are the plaintiff

17    seeking equitable relief, which is why we filed in chancery

18    court.  When we finalized the complaint, we added in almost as

19    an 11th hour addition the kind of quasi defamation claim, the

20    quasi breach of the operating agreement claim.  Those were sort

21    of ancillary to the equitable relief that we really are sort of

22    focused on in dissolving the LLC, which is why I inadvertently

23    misrepresented in the motion for remand that we weren't seeking

24    any monetary damages at all.  I think that was probably a

25    by-product of like Christmas Eve morning and holiday

1  distractions and all of that.

2  **THE COURT:**  And I recognize that in the notice of

3  removal the defendants didn't point out defamation or punitive

4  damages or compensatory damages.  They also focused on, as the

5  defendant said, in their notice of removal, this case involves

6  a dispute between the parties over contracts relating to the

7  management of a jointly owned limited liability company and

8  assets belonging to the company.  The value of the disputed

9  assets is estimated to be in excess of $1 million.  That was

10  the primary basis for amount in controversy in the defendant's

11  notice of removal.  So I do understand both parties were kind

12  of focusing at the initial onset as to the valuation of the

13  company or the valuation of the assets, and I get that.  Of

14  course, my job is I have to look at the entire complaint and

15  all of the monetary damages that are included in addition to.

16  **MS. WRIGLEY:**  Of course.  And in just the haste of

17  trying to -- ultimately, what happened is, whether it was

18  intentional or not, a procedural limbo was manufactured here.

19  And my clients were caught in that limbo where there were

20  injunctive orders in place in the chancery court, which we

21  understand to remain in effect pursuant to 28 U.S.C. 1450,

22  whichever the statute is.  But then we were in a position where

23  it was our position that the defendants were violating those

24  orders to the detriment of the client, which is why we implored

25  the Court to grant us some time, and we are appreciative that

1    you did do that.

2        But in the haste of trying to move this forward and figure

3    out which court is going to like parent this case, so to speak,

4    I did miss that.  So I just wanted to let the record reflect

5    and have an apology from me that I was moving too fast trying

6    to make a Christmas miracle happen before we all went off to do

7    the Christmas things.

8        In any event, as you have already identified, the main

9    issue here is the dissolution of the LLC.  And as you have

10    already quoted the applicable case law, that means that the

11    object of the litigation is how we're to calculate that amount

12    in controversy, particularly in a situation where the amount in

13    controversy is not facially apparent from the complaint.

14        And in this case, when we filed the complaint we made

15    reference to different types of damages, different claims and

16    prayers for relief, but it's not like we articulated a number.

17    We didn't quantify what the damages are.  So there is at least

18    the ambiguity that requires this exercise, which we understand.

19    In an effort to try to resolve that ambiguity in connection

20    with our reply in support, rebuttal, whatever the technical

21    term for that latest filing is, we did submit a declaration

22    from Josh Gregory, who is the member of QJR, who is the manager

23    of QJR, to stipulate that it was not our intent to seek damages

24    in excess of $75,000, and then that we would not accept damages

25    in excess of $75,000, just in an effort to try to resolve the

1    ambiguity again.

2    　　　Our laser focus in this case is the dissolution of the

3    LLC.  The defendants state in their response in opposition that

4    we're on the same page here, we all want to see this LLC

5    dissolved, almost questioning the motives for why we would file

6    it in chancery court, maybe suggesting we're playing some 3D

7    chess to deprive them of an opportunity to have a jury trial.

8    That's not the case.  The statute says the chancery court has

9    jurisdiction over a dissolution matter.  So we filed the

10   dissolution matter there.

11   　　　We believe that to the extent it is ambiguous from the

12   face of the complaint what the damages are, our declaration,

13   which is intended to serve as a stipulation, hopefully resolves

14   that, such that the Court doesn't require further analysis from

15   the parties.

16   　　　That said -- sorry.  I was sick the first time I talked to

17   you, then I got a cold again, so January has not been my month.

18   But ultimately, if we're focused on the face of the complaint

19   and the value of the object of the litigation, then the

20   ambiguity, we believe, is resolved via the declaration.  But to

21   the extent the Court has described the calculation that it

22   intends to follow looking at the value of the LLC and then

23   doing that, making an assessment based on sort of pro rata

24   membership interest, we believe that the amount in controversy

25   would still fall below that $75,000 threshold as a result of

1    the fact that the company is just not worth anything.  It's

2    functionally insolvent.

3         I did get the report from the accountant that Judge Harris

4    instructed us -- he didn't instruct us to engage this

5    particular accountant, but he instructed us to get an

6    accounting.  I got that over the weekend.  I am happy to submit

7    that to the Court, and then as well to the defendants, so we

8    have a copy and you can use that as you see fit.  But what it

9    shows is we are a company, Securix Mississippi, I should

10   clarify for the record, is a company without assets.  And while

11   I appreciate that the defendants have opinions about all this

12   potential that Securix Mississippi was going to have with these

13   sophisticated players and this national program to enforce the

14   Mississippi Uninsured Motorist Act, that didn't come to

15   fruition.  And just because the company had the potential to

16   have significant value, that was essentially sabotaged by

17   Mr. Miller and some of his actions, and that's not really

18   material to the arguments before the Court.  Ultimately, what

19   we're looking at is the functional value of the company, which

20   is virtually zero.

21        I am happy to address waiver.  The plaintiff does believe

22   and submits to the Court that the defendants by actively

23   participating in litigation before they were being served,

24   therefore availed themselves to the jurisdiction of the

25   chancery court, and so the 30-day clock effectively began to

1    tick when that occurred without objection.  I would say it goes

2    back to October 28th when the defendants, without objection,

3    participated in mediation prior to being served.

4        Afterward, the Court entered an injunction, which they

5    sought to modify and seek a protective order regarding, without

6    objection, to the jurisdiction of the chancery court, without

7    them having been served.  So while service is a formality, it

8    is a formality that can be waived.  And the plaintiff submits

9    that is exactly what the defendants did.  And although the

10   defendants point to cases, and there certainly exists case law

11   where participating in some of these preliminary

12   injunctive-type motion practice and hearings, doesn't

13   necessarily like, what's the term of art, unequivocally sort of

14   -- unequivocally indicate that they are litigating on the

15   merits of the case.  I mean, I agree with that.  But in those

16   cases, those defendants had been served, and they had a 30-day

17   clock that was ticking, and within which they filed their

18   notice of removal.

19       Here, the 30-day clock began ticking, I would submit, as

20   early as October 28th when the defendants participated in that

21   mediation.  So it's not necessarily the substantive activity in

22   and of itself; although, I do believe it also gives rise to

23   waiver, but it's that timeline of active participation without

24   service that triggered the 30-day clock to begin to run.

25       I will pause there just in case the Court has questions.

1   I think you understand the arguments pretty well.

2           **THE COURT:** Let's just kind of take each one of the

3   potential damages, so to speak, one by one. So we have the

4   value of the company. Of course, it's plaintiff's position in

5   the value of the company that it's defunct, it's worthless,

6   essentially. Right?

7           **MS. WRIGLEY:** Correct.

8           **THE COURT:** So that's plaintiff's position. I will

9   heard defendant's position with regard to that in a few

10  minutes.

11      First though, Mr. Jordan, have you seen a copy of this

12  accountant report?

13          **MR. JORDAN:** I have not seen that copy. We haven't

14  received it yet, Your Honor.

15          **MS. WRIGLEY:** Hot of off the presses. If I may give

16  a copy to the plaintiff's counsel and approach, Your Honor?

17          **THE COURT:** Yes. While I am asking Ms. Wrigley

18  questions, Mr. Jordan, you can kind of take a look at it.

19  Also, listen to the questions, of course, and then I am going

20  to follow up later about whether there's going to be any

21  objection to me considering this report for purposes of today's

22  hearing. All right, Mr. Jordan?

23          **MR. JORDAN:** Yes, sir, thank you.

24          **THE COURT:** I'll give you time to formulate an

25  objection if you have one.

1         **MR. JORDAN:**  Thank you.

2         **THE COURT:**  So with regard to the business, Securix

3    Mississippi, LLC, the value of the object of that piece of the

4    litigation, I understand your argument there.

5         Defamation, compensatory damages related to defamation, we

6    don't have specifics in the complaint, we don't have specifics

7    really about what the statements were, so it's hard for me to

8    see really -- I think some statements I could see would be so

9    egregious, I could easily see a value to put on those

10   statements.  I don't see what those statements are and I can't

11   really -- it's hard for me to put a value on compensatory

12   damages for some of these alleged defamatory statements without

13   knowing specifically, quite frankly, what the statements were.

14   So I am going to ask Mr. Jordan about that.

15        Same kind of goes to punitive damages.  I think punitive

16   damages relates to the defamation, I believe, and I am going to

17   ask Mr. Jordan about that.

18        Now, there's this breach of contract potential claim maybe

19   in paragraph 3 of the prayer for relief.  What is that?  I

20   wasn't really quite following.  I think maybe it was like a

21   past debt or some interest owed?

22        **MS. WRIGLEY:**  Right.  So in crafting the complaint we

23   tried to be as comprehensive as possible understanding certain

24   limitations for jurisdiction in a chancery court.  So with that

25   recognition aside, there are two sort of quasi breach of

1   contract type claims.  One involves just the exceeding the
2   scope of authority by defendant Miller as it was established in
3   the operating agreement, but that's not necessarily a place
4   where somebody is pinning a value.  It was just that, hey, the
5   members of QJR are supposed to handle these pieces, and you,
6   defendant Miller, exceeded your scope of handling the technical
7   side by contacting some of these state officials.  And that was
8   one basis for which plaintiffs, QJR, sought the injunctive
9   relief to cease that misconduct.

10          **THE COURT:**  Right.  But that was cause of action
11   number 1, the breach of the operating agreement.

12          **MS. WRIGLEY:**  Right.  So in the prayer for relief,
13   there is a debt that we contend that one of the Miller
14   entities, whether it's defendant Miller individually, or
15   Securix, LLC, that it owes QJR directly.  So not including
16   Securix Mississippi for consulting services that QJR would have
17   provided to defendant, Securix, LLC at the inception of this
18   program in Mississippi.

19          I am not sure if it was clear from your review of the
20   record, but Securix, LLC was the entity that initially obtained
21   some of these contracts, including the contract with Ocean
22   Springs.  And then for reasons that I was not involved with,
23   Securix, Mississippi had to be formed in order to resolve some
24   of the barriers to being able to obtain additional contracts.
25   But in the early stages, Securix, LLC utilized QJR as almost

1  like a consulting arm, is my -- again, this sort of predates

2  me, but that's my understanding.  So they didn't want to

3  completely foreclose the possibility of being able to recover a

4  debt that was, I believe, somewhere below $40,000.  We have not

5  fleshed all of that out in this litigation.  And I say that to

6  kind of include both the chancery court and the federal court

7  to know if that is a debt that is, in fact, owed and if so,

8  what its value is.

9         **THE COURT:**  Okay.  But you think that debt may be

10  somewhere below $40,000?

11         **MS. WRIGLEY:**  Yes, Your Honor.

12         **THE COURT:**  Is there an ability in the operating

13  agreement for a breaching party, or a non-breaching party, to

14  recover attorney's fees from the breaching party; in other

15  words, is there a contractual remedy of attorneys' fees?

16         **MS. WRIGLEY:**  I want to say that they left that out

17  for some reason when we -- when the operating agreement was

18  prepared, but let me see if it is here on the top.

19         **THE COURT:**  In other words, I am trying to understand

20  how real the attorneys' fees request is.  That's one of my jobs

21  I am supposed to look at in amount in controversy is, is there

22  an actual valid claim for attorneys' fees.  Of course, if the

23  plaintiff were to prevail on defamation in terms of punitive

24  damages or malice, or something like that, then the plaintiff

25  could get attorneys' fees.  But I am trying to understand, is

1   there an easier way to get attorneys' fees through contractual

2   remedy.

3         **MS. WRIGLEY:**  Of course.  I want to say that the

4   operating agreement was silent as to attorneys' fees, but I

5   have got it here in front of me, and I am trying to very

6   quickly glance at these headings to see if one jumps out at me.

7         **THE COURT:**  That's okay.  Ms. Wrigley, you can look

8   for that.

9         **MS. WRIGLEY:**  I don't think it's in there, though,

10   Judge, but I will figure that out.

11         **THE COURT:**  I believe that concludes all of my

12   questions for you.  And so, Mr. Jordan?

13         **MR. JORDAN:**  Yes, sir.  Do you want me to take up the

14   objection to the CPA's report now?

15         **THE COURT:**  You can if you are prepared with regard

16   to that objection at this time.

17         **MR. JORDAN:**  And the reason that I ask you first is

18   because, you know, production of this is ultimately an issue

19   here.  And the Court can see when I was handed this.  From what

20   I have thumbed through, it looks like it's approximately 39

21   pages.  And I got to tell you, I lost track of the argument

22   that was being made because I was looking through it.  Just out

23   of an abundance of caution, I would object to the opinion

24   that's in this.  And, certainly, I haven't verified the

25   numbers; however, I think it's very interesting that the amount

1    at issue is 1.3 million, approximately, on the last page, which

2    is precisely what we have claimed, which is at issue.

3         **THE COURT:**  That's not the value of the company.

4    That's not what this document is saying.  I understand -- I can

5    rule later on whether -- but just so the record is clear, it's

6    not what the document says the value of the company is.  That's

7    what it says the value of disbursements have been.

8         **MR. JORDAN:**  It is, the amount of money that has

9    ultimately flowed through it.  And I say that -- but just to be

10   succinct, is out of an abundance of caution I would object to

11   it being presented here just from sort of trial by ambush type

12   of theory.

13        **THE COURT:**  Okay.

14        **MR. JORDAN:**  Again, I haven't looked at it.  I looked

15   at the last page and then attempted to read some of the

16   numbers.  And it may turn out that this supports our claim.  I

17   just don't know, and I can't in good conscience allow it in

18   when I haven't even had a microsecond to look at it.

19        **THE COURT:**  Mr. Jordan, I am going to take your

20   objection under advisement.  I will rule on that later in this

21   hearing.

22        **MR. JORDAN:**  Thank you, Your Honor.  Considering the

23   sort of brief argument that we had before, I do have a full

24   argument based on my opposition to the remand.  And I am going

25   to skip through because I am very aware that the Court is

1   familiar with these facts.  I just want to sort of nail down a

2   few things that don't have to do with amount in controversy,

3   but do have to do with jurisdictional issues.

4       Anyway, on the facts of this case, this is a couple of

5   parties.  Securix, LLC is, essentially, a national company, all

6   right.  They are -- it's a non-Mississippi company.  It's an

7   LLC that is made up of individuals, two individuals,

8   Mr. Miller, who is here with me, and another individual from, I

9   believe, it's North Carolina.  Essentially, they are from out

10  of state.  And the purpose of this whole thing was to expand

11  Securix, LLC's business, and that's what they do, is they have,

12  not to put too fine a point on it, but they have these cameras

13  that take pictures of license plates.  And if you have

14  insurance it sends you -- if you don't have the proper

15  insurance, presumably it sends you a ticket for that.  They

16  have done this in other states, Securix, LLC has.  And

17  obviously Mr. Miller is named individually here, too.

18      Partnering with ultimately what became QJR was to expand

19  that business into Mississippi and to use that sort of

20  sophisticated intellectual property and hardware to do that.

21  QJR is essentially an entity of Securix Mississippi.  Securix

22  Mississippi is made up of Securix, LLC National, who I

23  represent, and QJR, which is a company that its principal place

24  of business is in Ridgeland, I believe, and it's three

25  individuals.  And that makes up Securix Mississippi.  So

1    Securix Mississippi, that's the 50/50 membership that you

2    alluded to, and I am very aware that you know that.

3        The parties' plan was to separate statewide and ultimately

4    piggyback on the success of what Securix, LLC has done in other

5    states and has done it several times and continues to do it.

6    Although, arguably, with the black eye that it's gotten in

7    Mississippi, it has sort of precluded it from any other states.

8        It should be noted that Mississippi, that we have complete

9    diversity, ultimately that there's no parties -- and if you

10   look in Mr. Miller's affidavit that he submitted, that there's

11   no parties that are associated with Securix, LLC, or himself,

12   of course, that aren't completely diverse with the plan.  So I

13   think it's obvious that we have complete diversity.

14       And this was a sophisticated joint provision, joint

15   endeavor.  And if you look at the size of the operating

16   agreement, it's substantial, it's not a small operation.  Since

17   the inception, right, Securix Mississippi obtained multiple

18   contracts using that data sharing agreement that is at issue,

19   from the beginning they had cash flow.  Ultimately, that

20   underscores the realistic -- that this was a realistic company.

21   Mr. Miller ultimately claims that he was frozen out of the

22   company.  Securix, LLC, or Securix Mississippi filed a petition

23   to dissolve.  And then there was an ex parte order sealing the

24   case from chancery court, and then an ex parte immediate

25   injunction that was placed, and then the Court ordered that

1    there be a mediation.  And I remember this specifically because

2    I was at the podium arguing it in Harrison County here, not in

3    this courtroom, and my phone, which was on silent, buzzed, and

4    I saw it was Judge Harris, the judge over the chancery court.

5    And I told the judge, I said, which judge do you want me to

6    ignore?  And it was not a very formal proceeding.  Anyway, so

7    we were excused and I talked to him, and he advised me that it

8    had been filed, that he was enjoining filing an ex parte and

9    enjoining it, and that he was sealing the case, and I said

10   okay.

11        We participated in the mediation because there was a

12   unilateral order to do so.  The judge selected Mr. Simpson, who

13   appeared at the mediation, and it just was unsuccessful.  But

14   there weren't any pleadings filed at that point.  There weren't

15   any -- there was no participation in state court.  The

16   defendants, both Mr. Miller and Securix, LLC, haven't been

17   served by QJR with the petition.  They haven't filed an answer

18   or any other responsive pleadings, they haven't affirmatively

19   requested any adjudication on the merits, and so on.  We

20   participated in a court-ordered mediation that was unilateral.

21        Ultimately, everybody agrees that the LLC should be

22   dissolved.  It's not an issue.  The plaintiff here seeks

23   damages and injunctive relief.  They title the petition as one

24   seeking dissolution, but also seeks damages and injunctive

25   relief, which from our perspective is very important, right?

1    The injunctive relief and damages -- they ask for damages for

2    defamation, they ask for damages due to the breach of the

3    independent contract agreement that opposing counsel spoke of.

4    They also ask for interest.

5        There's a potential political sensitivity to the case

6    because of who is involved, that the City of Ocean Springs is

7    involved and the State of Mississippi and its governmental

8    entities.  And this is precisely the type of case that should

9    be removed and have the defendants, you know, entitled to a

10   jury trial.

11       In saying that, essentially, to respond to QJR's arguments

12   for remand, there are several points.  The first one is what

13   the Court wants to look at, does the amount in controversy --

14   and this is the heart of getting started of where we are,

15   does -- it exceed $75,000, right?  If you look at the law and

16   in the Southern District of Mississippi, the 2003 case that I

17   cited, the Citigroup case, the law is whether a case is

18   removable --

19           **THE COURT:**  Let's get into the specifics.  What's the

20   value of Securix Mississippi, LLC?

21           **MR. JORDAN:**  So that's the question at issue.

22           **THE COURT:**  Well, it's your burden.  You have to tell

23   me, what's the value of it and what's your evidence behind it?

24           **MR. JORDAN:**  Let me cut to the chase.  They are not

25   adding up parts of this, right?

1    **THE COURT:**  What specifically is the value and how do

2    you get there?

3    **MR. JORDAN:**  You can several ways, but to quickly

4    answer your question is the financials that we produced show

5    that there has been amounts received in excess of $1.3 million,

6    okay?

7    **THE COURT:**  Okay.

8    **MR. JORDAN:**  Amounts received in excess of

9    $1.3 million.  There is a $345,000 debt, right, arguably, it's

10   a debt and we're not sure because we have been frozen out of

11   the corporation, that is owed to the State of Mississippi.

12   They are holding $345,000 in funds.

13   **THE COURT:**  Wait, what?  It's a debt.  A debt is not

14   value.  A debt is the opposite of value.

15   **MR. JORDAN:**  Well, they are holding those funds.

16   That debt is owed and they refuse to pay it.  They have

17   received the 1.3 million.

18   **THE COURT:**  But you are saying the debt is owed.

19   That's a liability, it's not an asset.

20   **MR. JORDAN:**  But that debt is --

21   **THE COURT:**  A value is a value, right?  I am trying

22   to figure out the value.  And a value -- we're looking at like

23   assets, right?  Aren't we doing that?

24   **MR. JORDAN:**  Sure.

25   **THE COURT:**  So I agree, it seems like the plaintiff

1  is going to concede that over $1.3 million in receipts Securix

2  Mississippi, LLC has received.  That is a lot of money, there's

3  no question about that, that a company has received that much

4  money in one year period of time.  But it does seem like the

5  law is telling me I have to figure out value.  So in your

6  notice of removal, you said the value of the disputed assets is

7  estimated to be in excess of $1 million.  Is that solely based

8  off of just the receipts?

9         MR. JORDAN:  Because the only thing we know is we

10  have received $15,000 based on his affidavit, and that's all we

11  have received.  We haven't seen the books.  We have requested

12  an accounting.  At the request of the accounting, they shut it

13  down.  There's other aspects to the value here other than the

14  value of just the company, right?  As far as --

15         THE COURT:  Why?  Okay.  I think the law is telling

16  me to value the company.

17         MR. JORDAN:  It is.  You also have to look -- what

18  they did is they claimed that -- now, what they're saying, they

19  are claiming less than 75,000.  But that doesn't include what

20  the injunction is worth, that the injunction, how much that is

21  worth.

22         THE COURT:  Okay.  Let's just put your number out

23  there for value of the company, what is it, or is it I don't

24  know?

25         MR. JORDAN:  It's not that I don't know.  It's that

1    it can't be determined because they have frozen us out.  We can

2    only have an educated guess of what that company is owed.

3            **THE COURT:**  What's the educated guess of what the

4    value of the company is?

5            **MR. JORDAN:**  Half of the 1.3, we believe, has been

6    received, minus the 15,000 that we have actually received, and

7    the $340,000 debt minus that amount.  And let me clarify -- and

8    I have just been notified by Mr. Miller that specifically that

9    debt is owed by QJR, that it's owed to the Department of Public

10   Safety and not Securix Mississippi.  I misspoke.

11           **THE COURT:**  And this is --

12           **MR. JORDAN:**  The $345,000 would still arguably be at

13   play.

14           **THE COURT:**  Because QJR has the contract with the

15   State of Mississippi, not Securix Mississippi, LLC?

16           **MR. JORDAN:**  Let me clarify, Your Honor.

17           **THE COURT:**  I mean --

18           **MR. JORDAN:**  Your Honor, he is telling me that

19   unilaterally QJR agrees that they owe that money.  I believe

20   the contract is actually with Securix, LLC.

21           **THE COURT:**  Okay.  But none of this is in the notice

22   of removal and we don't have any in evidence in front of me on

23   this now?

24           **MR. JORDAN:**  No.

25           **THE COURT:**  I think right now I am at a point where

1    -- your position essentially is I just need to try to say the

2    value of the company is a lot, certainly more than $75,000

3    since the company was taking in over 1.3 million dollars?

4    That's basically your argument, it sounds like.

5            **MR. JORDAN:**  Almost.

6            **THE COURT:**  Okay.

7            **MR. JORDAN:**  Almost.  Because there's several parts

8    to this.

9            **THE COURT:**  I know, but I am just talking about for

10   the value of the company.  I am not talking about the other

11   aspects of damages.

12           **MR. JORDAN:**  Yes, Your Honor.

13           **THE COURT:**  It sounds like, primarily, your argument

14   is surely the company is worth more than $75,000 if it takes in

15   over $1.3 million in a year.

16           **MR. JORDAN:**  It almost has to be --

17           **THE COURT:**  That sounds generally kind of what your

18   argument is.

19           **MR. JORDAN:**  It almost has to be because we have been

20   frozen out of the company.  We're entitled to see the books.

21   We asked to see the books, nothing.  We get nothing.  In fact,

22   we'll give you an accountant.  The Court ordered the accounting

23   and we got what purports to be the accounting about ten minutes

24   ago.

25           So my position is, yes, you have to make an educated guess

1    on what the company is worth, but you don't have to solely rely

2    on that because there's multiple other pieces and other laws

3    that you're going to add up that, what I see,is kind of like

4    the cash register --

5        **THE COURT:**  I hear you, but educated guess is a lower

6    standard than a preponderance of evidence.  You have the burden

7    to demonstrate by a preponderance of the evidence, more likely

8    than not, what the value is right?  An educated guess is not

9    more likely than not; it's just that, it's a guess.  It's

10   educated, but it's still a guess, and that's not my standard.

11   The law is very clear I can't use an educated guess as a

12   standard, it is more likely than not, what is the value of the

13   company?  And it may be that your argument is just like,

14   surely, Judge, a company that's taking in $1.3 million has a

15   value at least above $75,000.  That may be a winning argument,

16   I am not saying it is, I'm not saying it isn't, that's what it

17   sounds like it is.

18       **MR. JORDAN:**  If we have -- may I have one second with

19   my client?

20       Your Honor, so out of an abundance of caution, I will

21   withdraw my objection to having the accounting submitted into

22   evidence.

23       **THE COURT:**  Okay.

24       **MR. JORDAN:**  And the only reason is, although I don't

25   think it's necessary because of the arguments that I am going

1    to make about injunction and the value of the breach of

2    contract and irreparable harm, I think that clearly gets us

3    past the 75,000.  But in response to your comments, having to

4    have something substantial to put my finger on, that's all they

5    have given me.  I don't know, there could be a bomb in there.

6    I doubt it.

7              THE COURT:  Okay.  So you're withdrawing your

8    objection.  You do want me to consider it.  This is -- y'all

9    want to file this restricted for attorneys' eyes only?

10             MS. WRIGLEY:  If possible, Your Honor, yes, please.

11             THE COURT:  Mr. Jordan?

12             MR. JORDAN:  I would, out of an abundance of caution,

13   just because the state court record is sealed restricted, and I

14   don't want to step on that.

15             THE COURT:  And there's checking accounts, there's a

16   lot of financial data.  We obviously have not gone through this

17   and made sure there's no personally identifiable numbers and

18   so -- essentially, what the parties want me to do is file it as

19   restricted, is that fair?

20             MR. JORDAN:  Yes, sir.

21             MS. WRIGLEY:  Yes, sir.

22             THE COURT:  In light of there being no objection to

23   this being considered for purposes of today's hearing, then

24   this document that was presented today as an accounting of

25   Securix Mississippi, LLC will be Exhibit 1, plaintiff's

1    Exhibit 1 to today's hearing and it will be filed restricted,

2    that's restricted attorneys' eyes only.

3         (EXHIBIT P-1 MARKED)

4         **THE COURT:**  So I think I have an understanding -- I

5    have the accounting in front of me.  I also have your arguments

6    about the valuation of the company.  Now, let's move on to how

7    you want to get to $75,000 through the other arguments you want

8    to bring.

9         **MR. JORDAN:**  Let me show you how we get there.

10   Ultimately, what has happened is, is that in the reply the

11   plaintiff -- and this is my brief argument of everything that I

12   have briefed.  They are saying that the max amount we can

13   recover is $74,999 arguably, right?  They say it's less than

14   $75,000.  That doesn't include the injunction and what that

15   injunction is worth.  I know you don't want me to go over it.

16   In my brief, I walk you through the specific -- the law on

17   injunctions, how you value the law on injunctions --

18        **THE COURT:**  You value the law of injunctions on the

19   value; right?

20        **MR. JORDAN:**  Yes.

21        **THE COURT:**  Of the object of the litigation?

22        **MR. JORDAN:**  You value the injunction -- basically,

23   the value of the injunction is the harm that it is intended to

24   prevent, right, that's the rule.

25        **THE COURT:**  Right.  And that's why I went into the

1    50 percent ownership, because you divide it in half, the value

2    of the company, because that's the harm to the parties, either

3    one of them.

4         **MR. JORDAN:**  That's not what they are claiming, is

5    that it's solely exclusive to the harm of the economic value of

6    the company, okay.  They didn't -- that doesn't include in

7    their less than $75,000 what that injunction is worth.  If that

8    injunction is --

9         **THE COURT:**  How much is the injunction worth?

10        **MR. JORDAN:**  Well, that's my point.

11        **THE COURT:**  It's your burden.  And what specifically

12   are you saying the injunction damages would be?  I am trying to

13   understand what's the harm --

14        **MR. JORDAN:**  They are saying that the injunction is

15   mandatory, huge consequences are going to happen if they don't

16   have this injunction.  They speak out of both sides of their

17   mouth, and I put it in the brief.  When you're talking about --

18   let me find it because it's very clear here.  So when you are

19   talking about --

20        **THE COURT:**  What are they seeking to enjoin?

21        **MR. JORDAN:**  Can I add one more point, just back up

22   before we get back on the value of Securix?  There's also a

23   class action suit, right, that has been filed against Securix

24   Mississippi.  The class action clearly implies that there's a

25   plaintiff out there, there's a bunch of them --

1          **THE COURT:**  I saw your footnote on that.  I

2   understand that.

3          **MR. JORDAN:**  They also haven't filed bankruptcy.

4          **THE COURT:**  I saw your footnote.

5          **MR. JORDAN:**  Okay, good.  I don't want to go through

6   this and argue it.  The value of injunctive relief, if you look

7   at that rule, it's just what we said, it's the harm the

8   injunction was intended to prevent.  And the plaintiff's speak

9   out of both sides of their mouth.  When you talk about the

10  issue of amount in controversy reaching $75,000, they say the

11  defamation is trivial.

12         **THE COURT:**  Right.  And I get that argument.  I think

13  that's a plausible argument in terms of the speaking out of

14  both sides of your mouth, but what is the value, what is the

15  harm, and how much is it, and how do we get there?

16         **MR. JORDAN:**  The harm is they are sophisticated --

17  the harm is the extent that they still want to enforce the

18  injunction.  If you look on page --

19         **THE COURT:**  What is the injunction, what would it do?

20         **MR. JORDAN:**  They want to stop the defamation from

21  ruining political careers, that's their argument.  So those

22  political careers have certain amount of value, certainly more

23  than 75,000.  How do you put a dollar amount on that?

24         **THE COURT:**  We're going to get to the past

25  defamation, but you are talking about future defamation?

1      **MR. JORDAN:**  I am talking about current defamation

2   that they already claim has happened and they filed a motion --

3          **THE COURT:**  Right, but that's compensatory damages

4   and punitive damages for past defamation.  An injunction

5   enjoins someone from future behavior, right?

6          **MR. JORDAN:**  It's all the same.  And they claim that

7   it's imminent, it's necessary, there's nothing more important

8   than this happening because of the huge consequences, arguably

9   monetary consequences, that could happen.

10         **THE COURT:**  And what would those monetary

11  consequences be?

12         **MR. JORDAN:**  How would you put a number on a loss of

13  a political career with substantial, what they call

14  substantial --

15         **THE COURT:**  I don't know, you tell me.  You can put a

16  number on it.  Defamation cases have numbers on them.  They

17  have them every time.  So what is the number?

18         **MR. JORDAN:**  The number would be in excess of a

19  million dollars.

20         **THE COURT:**  Okay.  How do you get there?  Because the

21  plaintiff is QJR.

22         **MR. JORDAN:**  Right.

23         **THE COURT:**  Right, does QJR have a political --

24         **MR. JORDAN:**  Yes, that is what they are claiming.

25  The members of QJR, which is the initials of their first

1    names.

2        **THE COURT:**  But if QJR goes to trial against the

3    defendants, QJR is the plaintiff.  In other words, I don't know

4    all the members of QJR, LLC, but let's say John Doe is a member

5    of the LLC, John Doe doesn't get to get on the stand at trial

6    and say, I have personally been harmed and defamed personally

7    and I am entitled to damages, right?

8        **MR. JORDAN:**  The injunctive relief is to stop them

9    from talking about them individually, not talking about QJR.

10        **THE COURT:**  Where does it say that in their prayer

11    for relief?  Even still, that's still future action that --

12    that is speculative, it hasn't happened, right?  That's

13    something that hasn't happened in the future.  What I am

14    saying, a defamation climb -- I am trying to understand what

15    the value of this defamation claim may be.

16        So again, John Doe takes the stand at a trial, and John

17    Doe, member of QJR, LLC, says I have been defamed, my personal

18    career has been harmed, and so I want damages from you, Judge,

19    or jury, as to that.  That's not happening.  It's not

20    happening.  The plaintiff is QJR, right?  That's who the

21    damages have to come from.  And so what is the damage to QJR?

22    I am trying to understand -- we have no statements in the

23    complaint about a specific statement that's clearly defamatory

24    or that says something that I can view as very defamatory of

25    QJR.  So what is this statement that is so bad that harms their

1    reputation, I am just trying to get to that?

2    **MR. JORDAN:** And they don't say it, and they don't

3    put a dollar on it, and they don't say what the dollar is and

4    whether that's intentional or not or they just didn't do it, I

5    don't know. Everything they say -- they specifically say that

6    the memberships and QJR have specific important political

7    interests and business interests to protect, and that's what

8    the --

9    **THE COURT:** That's the conclusory statement.

10    **MR. JORDAN:** It's what they say.

11    **THE COURT:** I know, but it's your burden to tell me

12    what the value is.

13    **MR. JORDAN:** So there's no way you can put a dollar

14    amount on that from something that is objective.

15    **THE COURT:** Right. And I think the thing is about an

16    amount in controversy, in the vast majority of amount in

17    controversy arguments that I deal with, say it's a car wreck

18    case, we can take the medical expenses that are known and then

19    I can use those for amount in controversy. Those are hard

20    numbers. And then I can probably understand how bad the

21    accident was and get a feel for pain and suffering, get a feel

22    of whether punitive damages is at stake, etcetera.

23    So I think defamation, that's why it's very important to

24    understand what the statement was, who is being harmed, what

25    their reputation is, those types of things to understand fully

1    what the harm is to that individual.  There's defamation cases

2    where somebody may get awarded nominal damages.  There's

3    defamation cases, for example, one from about 20 years ago in

4    the Mississippi state court system where a military member was

5    defamed arguably, allegedly, was actually a malicious

6    prosecution case, but kind of tied up in defamation, and he

7    lost his rank, at least arguably.  So there was clear -- there

8    was a clear through-line to that damage, you see what I am

9    saying, because he lost -- he lost the opportunity to advance

10   his career because of something that was said or something that

11   happened to him.  So that's why I am trying to understand

12   because unlike a car wreck case it's a little bit more

13   subjective, so to speak, what the damages are that relate to

14   defamation.

15          **MR. JORDAN:**  They say their business interests are

16   substantial.  I was surprised when they said that.  They came

17   out and said, we are of great political importance.  Our

18   business interests are substantial.  We are very important.  In

19   fact, when I am reading that, looking at it at chancery court,

20   to me, maybe on my side of the V, it looks like, judge, you

21   rule in our favor because we have a lot of political importance

22   and we can -- you're elected.  I don't know if that's true, I

23   don't think that's true, but that's the way it reads if you're

24   arguing.  They say that they have substantial and immediate

25   huge business interests and reputation to defend and that's the

1    reason for it.

2         Now, they don't say that that business interest is over a

3    million dollars.  I would argue that it was because Securix

4    Mississippi has taken in more than a million dollars, and they

5    haven't even expanded throughout the State of Mississippi yet.

6    They are only in a few very select counties.

7              THE COURT:  Do you know the value of QJR, LLC?

8              MR. JORDAN:  We don't know -- they have given us

9    nothing.

10             THE COURT:  I know that.

11             MR. JORDAN:  Literally, I don't know the value of it.

12             THE COURT:  Do you know like any contracts that QJR,

13   LLC has or anything like that?  See what I am saying?  I am

14   trying to understand what the damage to the reputation of QJR,

15   LLC would be.

16             MR. JORDAN:  And I am glad you said that.  Because

17   the contracts that Securix Mississippi, LLC has with the states

18   were all procured by QJR, the members of QJR.  They weren't

19   procured by the members of Securix, LLC or Mr. Miller.  He's

20   not from Mississippi, didn't live here.  Every contract we

21   have, every state contract that was procured and served for

22   Securix Mississippi, LLC was procured by QJR, period.

23             THE COURT:  Let's go to some of the other more

24   specific damage types and make sure I am on the page with you.

25   First, attorneys fees, costs.  Any avenue to attorneys' fees or

1    costs contractually that you know of, or would it all have to

2    flow through punitive damages or defamation?

3          **MR. JORDAN:**  From what they have seen, I don't see

4    anything contractually for attorney fees.

5          **THE COURT:**  So if someone breaches an operating

6    agreement, the prevailing party is not automatically entitled

7    to attorneys' fees?

8          **MR. JORDAN:**  I don't see it, no.

9          **THE COURT:**  And then this debt, potentially, that

10   predated Securix Mississippi, LLC that was kind of thrown in as

11   a prayer for relief, kind of, there's really no cause of action

12   for it that I see.  Did you see a cause of action for it?

13         **MR. JORDAN:**  Well, they specifically claim that the

14   breach of the prior cause is worth about $42,000, I believe I

15   heard opposing counsel say.

16         **THE COURT:**  I think she said it's below 40.

17         **MR. JORDAN:**  Well, below $40,000.  And that was a

18   contract that predates the operating agreement, the way I

19   understand it.  So I believe that we start at $40,000.  It's

20   paragraph 3 of the petition for relief, where they claim that

21   the damages from breach of contract are asserted.

22         **THE COURT:**  Mr. Jordan, you can take a minute and

23   consult with your client, and then you can close if you would

24   like.

25         **MR. JORDAN:**  Okay.  If I can have two seconds?

1          **THE COURT:**  Yeah, you can take your time for a little

2     bit and consult with your client.

3          **MR. JORDAN:**  I would like to request an opportunity

4     for a post reply brief solely on the accounting because I think

5     from what Mr. Miller is telling me, there is the

6     misappropriation of several hundreds of thousands of dollars.

7     And if we see that accounting, and maybe Your Honor --

8          **THE COURT:**  Are you going to ask me in a post reply

9     brief to make a ruling on misappropriation when my job right

10    now, jurisdictionally, is just to determine the value, right?

11    And I understand maybe you say, well, you're going to have to

12    determine misappropriation to determine value.  You see what I

13    am saying, that's like a whole trial.

14         **MR. JORDAN:**  It is.  I want to show you a dollar

15    amount, and I want to be able to use a post reply brief to look

16    at this accounting to do that because you are looking for an

17    objective dollar amount on the business.

18         **THE COURT:**  Ms. Wrigley, just his request for a post

19    reply brief.

20         **MS. WRIGLEY:**  I mean, Your Honor, we would object

21    to -- obviously, we defer to the decision of the Court, but I

22    mean, I do think it opens a can of worms that are really not

23    properly within the scope of removal/remand analysis.  Once you

24    start getting into those weeds -- and it really doesn't impact

25    the value of the organization overall.  That's a dispute that

1   has to be maybe resolved, but ultimately wouldn't that be a

2   debt that doesn't go to valuation necessarily.

3          I would object to a post reply brief in that he has

4   consented to the admission of the exhibit here, not

5   withstanding the fact he was only briefly able to review it.

6   And to the extent there are issues from the perspective of the

7   defendant as to what this certified accounting report shows,

8   then that's something that should be resolved after a

9   jurisdictional decision is made either in your court or back in

10  the chancery court with Judge Harris.

11          **THE COURT:**  Okay.  I will take that request under

12  advisement, the request for a post reply brief.

13          Mr. Jordan, anything else?

14          **MR. JORDAN:**  Just in conclusion, Your Honor, for two

15  points, a conclusion of the valuation argument and then the

16  conclusion of the waiver argument.

17          Obviously, when you are looking at the amount in

18  controversy you are looking at all the plaintiff's claims, and

19  that's the damages for defamation, which, again, they

20  include -- I'd like to point out on page 5 of their reply

21  brief, they state that they are still asking for injunctive

22  relief, they still want the violations of the relief.  So

23  clearly there's value to the injunctive relief.  The damages

24  for defamation, damages for breach of contract asserted in

25  paragraph 3 of their petition, the value of the plaintiff's

1   claim for injunctive relief, and the value of Securix

2   Mississippi, the company that they are fighting over, the

3   50 percent, that's the amount of dispute computed, far exceeds

4   $75,000.

5        Now, with respect to waiver, again, I have the case cited

6   as the *Celi*, C-E-L-I, case.  There's just no substantial action

7   that was taken prior to removal.

8        **THE COURT:**  Mr. Jordan, let me pause you.  I tell you

9   what we're about to do.  We're about to take a brief recess.

10  Since this document has now been admitted and we are -- I am to

11  consider this document, I do want to give you and your client

12  an opportunity to go over it.  I am taking under advisement

13  your post reply brief request.  I want to give you an

14  opportunity to argue about the document today in a more

15  efficient manner than just a post reply brief.  I may give you

16  a post reply brief, but I do want to give you the opportunity

17  to argue about it today.  So we're going to take a recess until

18  4:20.

19       And one thing I am -- it looks like to me, and I am going

20  to want to hear from Ms. Wrigley about this, it looks like to

21  me that this is a summary of cash, not a balance sheet.  It's a

22  summary of cash.  Cash, obviously, is an asset, I think that

23  would go to valuation.  The ending balance is $57,065.46.  I

24  mean, of course you would divide that number in half for the

25  valuation of the defendant's portion that's, $28,522.73.  But

1    it doesn't look like the business is defunct.  I don't see that

2    from the cash standpoint.  Maybe there's some, I guess,

3    liabilities out there that are undisputed, and so there's -- I

4    don't know.  I don't know -- from this, it doesn't just clearly

5    show the business to be defunct.  I also don't know from this

6    what the assets of the business are in terms of does this

7    business own a building, you know, does it have a mortgage on a

8    building, is it upside down, all those types of things.  Maybe

9    that's just outside the scope of what I need to get into, but I

10   don't know if this is really fully helping me with valuation of

11   a company.  And so I will give Mr. Jordan the opportunity to

12   look at this a little closer and to formulate any arguments

13   that he may have on valuation of the business.

14          **MR. JORDAN:**  Thank you, Your Honor.  When we come

15   back, do you want me to summarize my waiver argument or did we

16   cover it in the brief enough?

17          **THE COURT:**  I think you have covered the waiver

18   argument.

19          **MR. JORDAN:**  Okay, good.  And when do you want us

20   back?

21          **THE COURT:**  Let's come back at 4:20.  We'll do 4:25.

22   That will give you 20-something minutes to go over this with

23   your client.

24          Court will stand in recess.

25          **(RECESS TAKEN AT 4:03 P.M. UNTIL 4:25 P.M.).**

1          **THE COURT:**  As a reminder, does anybody have any

2     recording devices in here?  Y'all may have your phones or

3     anything?

4          **MS. WRIGLEY:**  I have a phone, but it's not on.

5          **THE COURT:**  Anybody else have a phone or anything, or

6     an iPad?

7          **MS. WRIGLEY:**  I have a phone, but it's not doing

8     anything.

9          **THE COURT:**  Just as a reminder, in federal court

10    nothing can be recorded.  That's just a reminder.  The only way

11    traditionally, there's some exceptions, but traditionally the

12    way we preserve things in federal court is through the court

13    reporter transcript.  It's just a reminder.

14        Mr. Jordan, have you had an opportunity to go over this

15    accounting of cash, summary of cash?

16         **MR. JORDAN:**  I have, Your Honor.  I went over it with

17    Mr. Miller.  And initially, I had told the Court that I didn't

18    have any witnesses, but after receiving this I would call

19    Mr. Miller for a couple of questions.

20         **THE COURT:**  All right.  Ms. Wrigley?

21         **MS. WRIGLEY:**  I mean, Your Honor, I would object to

22    Mr. Miller being able -- I don't know what relevance his

23    personal knowledge will have about any of these.  If by Mr.

24    Jordan's earlier argument that he was totally shut out and had

25    no knowledge of financial operations I am not sure what he is

1    going to be able to offer that is admissible as it relates to

2    the cash transaction summary.

3              THE COURT:  Okay.  Objection is overruled.  You can

4    raise that objection during the testimony if there's anything

5    that comes up as to relevance, obviously, you can preserve

6    those objections.  Mr. Miller is going to be allowed to

7    testify.

8         Mr. Jordan, you may call Mr. Miller.

9              MR. JORDAN:  I would Your Honor.  I call Mr. Miller

10   to the stand, Mr. Jonathan Miller.

11        (Oath Administered)

12             MR. JORDAN:  Your Honor, I intend on using this, the

13   marked exhibit for him, and I just have this one copy.  Do you

14   want to us use the marked copy for him to refer to?

15             THE COURT:  The one that's been entered into

16   evidence?

17             MR. JORDAN:  Yes, sir.

18             THE COURT:  You can just use the one that you have.

19             MR. JORDAN:  Okay.  May I approach?

20             THE COURT:  Yes.  We actually have -- you can use the

21   Elmo, that can make things easier.

22             MR. JORDAN:  Some of these have my notes on them.

23             THE COURT:  That's up to you.  This is just a judge

24   hearing, so it's not in front of a jury.  I don't care if I see

25   your notes.

1    **MR. JORDAN:**  I will mark it out.  Not mark it out,

2    put a piece of tape over it.

3    **THE COURT:**  You can use the evidence copy if you

4    want.  I have got it right here.

5    **MR. JORDAN:**  It should be simple because I am not

6    using a lot of pages.  That's okay.  We'll do it the old way.

7    Your Honor, may I approach?

8    **THE COURT:**  You may.

9    **JONATHAN MILLER,**

10    **having first been duly sworn, testified as follows:**

11    **DIRECT EXAMINATION**

12    **BY MR. JORDAN:**

13    Q.  Mr. Miller, will you state your full name and your address

14    for the record, please?

15    A.  Certainly.  My name is Jonathan Miller, and my address, my

16    personal address --

17    **THE COURT:**  Just say where you live.  There's some

18    personally identifiable information we're trying to keep out of

19    the record.

20    **BY MR. JORDAN:**

21    Q.  What city do you live in, Mr. Miller?

22    A.  Conyers, Georgia, near Atlanta.

23    Q.  Are you a member of Securix, LLC?

24    A.  I am one of three owners, yes.

25    Q.  What's your position in the company?

1    A.  I am the chairman.

2    Q.  Have you been involved with the formation of Securix

3    Mississippi?

4    A.  Yes, sir.

5    Q.  At what point did you become, first become involved with

6    it?

7    A.  I was the original sole member of Securix Mississippi when

8    it was first created.  That was back, I think, the middle or

9    August, roughly August of 2024.

10   Q.  Are you familiar with --

11   A.  '23.  I am sorry, '23.

12   Q.  Is there anyone else in Securix, LLC that would be more

13   familiar with the books, the numbers, and the issues that have

14   been pled than you?

15   A.  As far as the books are concerned, certainly.  We have

16   accounting folks.  But as far as the general structure of

17   things, no, I would be the most knowledgeable.

18   Q.  Are you -- can you testify to how much money that Securix,

19   LLC has received from Securix Mississippi?

20   A.  One percent of the total collected amount.  We've received

21   $15,000 over the last year or so, and the company is still

22   there.

23   Q.  Before that.  You're familiar enough to testify about

24   that, is what I am asking you?

25   A.  Yes, sir, I am.

1   Q.  If you look -- we have received, obviously, as you know

2   and the Court has given us time to review, and you and I have

3   reviewed what we're calling an accounting.  And you have the

4   last page of that accounting in your hand.  In fact --

5           **MR. JORDAN:**  Your Honor, may I approach because page

6   35 and 36 go together.

7           **THE COURT:**  Yes.

8   **BY MR. JORDAN:**

9   Q.  And Mr. Miller, what two pages do you have?

10  A.  Pages 35 and 36.

11  Q.  Okay.  Now, and you have reviewed this accounting with me

12  in the interim, the break that we took?

13  A.  Yes, sir, I did.

14  Q.  How much money has Securix Mississippi received total?

15  A.  Well --

16  Q.  I'm sorry, Securix, LLC, how much have they received from

17  Securix Mississippi, or QJR?

18  A.  A total of $15,000 in net income.  We have received -- I

19  am pretty sure this is very close, about $50,000 in payments

20  for equipment, insurance, web posting.

21  Q.  You say you are pretty sure.  What is the maximum amount

22  that could possibly be?

23  A.  $60,000 would be the absolutely most it could be.

24  Q.  Is that in addition to the 15,000?

25  A.  Yes, sir, that would be in addition to the 15,000.

1   Q.   Is that what's reflected on the accounting you're holding

2   in your hand?

3   A.   No, sir, it is not.

4   Q.   What does the accounting say?

5   A.   The accounting says $246,286.63.

6   Q.   Do you know why -- so is that correct?

7   A.   No, sir, that can't be.  That's not correct.

8   Q.   Why?

9   A.   The reason, sir, is that -- I don't know what makes that

10  up.  I see no detail work here at all.  I have no idea how they

11  could come up with a number like that, but it's clearly

12  inaccurate, very inaccurate.

13  Q.   But it's your testimony that, in gross, you have received

14  a maximum of $60,000, plus $15,000, net?

15  A.   Yes, sir, that's correct.

16  Q.   Are there any other numbers on those sheets that you can

17  -- that you can identify after having looked at them as clearly

18  incorrect?

19  A.   There are a number of things that come to mind right away.

20  Q.   What do you see?

21  A.   First off, Milton Hickson is a full-time employee, and yet

22  he has only been paid -- and I have seen all the numbers.  He

23  was paid total for this entire period of time, over a year,

24  $900, $923.  So that's completely wrong.  QJR, it shows that

25  QJR was paid $42,349.  I am not sure what that means or what

1   for.  Josh Gregory was paid $5,178, that's personal.  He is not

2   allowed to be paid separately out of that.  And then Mark

3   Dunston, I know for a fact, because I have seen the bank

4   records on this, Mark Dunston has been paid 48,000.  Mark

5   Dunston is their business partner.  There is no authority to

6   pay Mark Dunston anything.

7   Q.  And how much does it show on there that he was paid?

8   A.  It's wrong.  This has 38,000.  I know it's 48,000, based

9   on the last records.  The other part of the problem, sir, is

10  that the system was shut down because of misuse by QJR in

11  August.  And the banking is still happening.  This goes through

12  November 30.  But as of yesterday, the bank account is still

13  open, transactions are still happening, the money is being

14  stripped, as all of these people are working for other business

15  interests for QJR.

16  Q.  And how do you know the banking continues?

17  A.  We have access to just see the overview of the bank.  We

18  have no access to the detail work or anything else.  The other

19  thing, of course, is that their net site talks to the effect

20  that Securix Mississippi is operational in multiple states.

21  There's a lot more going on here than is being discussed.

22  Q.  Now, one more question.  You said you had access to the

23  banking records, or a portion of the banking records; is that

24  correct?

25  A.  Mike McRae, who is our company secretary, has, and it's

1    regularly sent across to me.  It's only the overviews.  They

2    are just typically bulk amounts.  But yes, we see that

3    break-out.

4    Q.  Now, you have included that break-out with totals in your

5    declaration as an exhibit, haven't you?

6    A.  Yes, sir, I have.

7    Q.  Is there anything else you can see from your view that you

8    want to tell the Court that's improper?

9    A.  Well, there's Frontier Strategies, which is Josh and

10   Quinton, this is, you know, $3,408.  I don't want to be a pure

11   difficult.  All I know is that we have a great many people who

12   are still working.  The system was shut down in August.  They

13   are all being paid.  Clearly on that basis alone, there's

14   diversion of funds.  But we estimate that there's been

15   diversion of funds of at least $200,000, plus the $345,000 that

16   QJR owes to pay DPS, which is a very substantial amount of

17   money.

18   Q.  And this accounting ended in November; is that correct?

19   A.  Yes, sir, that's right.

20   Q.  And you have personally seen bank account statements that

21   continue up to when?

22   A.  Yesterday.

23            **MR. JORDAN:**  Nothing further, Your Honor.  Thank you.

24            **THE COURT:**  Ms. Wrigley?

25                         **CROSS-EXAMINATION**

1   BY MR. JORDAN:

2   Q.  Mr. Miller, I am Jaklyn Wrigley.  We have met before.  You

3   have access to the accounts, you have seen the accounts

4   recently; is that correct?

5   A.  I see the overview, yes, that's right.

6   Q.  At any time, has your access to the account been deprived?

7   A.  No, not at all.

8   Q.  How much money is in the account?

9   A.  Again --

10  Q.  As of today or whenever you most recently checked it?

11  A.  Really, I don't know.  It's changing.  The money keeps

12  getting stripped out for other purposes.  I think it was about

13  $50,000 the last time.

14  Q.  You think it was $50,000 within the last 48 hours?

15  A.  Oh, no, no, I don't know.

16  Q.  I am asking you, Mr. Miller, how much money was in the

17  account the last time you checked it, which you just

18  represented to the Court, was recently?

19  A.  I do not remember.  I don't think I even bothered with

20  that because the money changes, the balance changes all the

21  time.

22  Q.  Give me a ballpark.

23  A.  And it's just a guess, but I would suggest about 16,000.

24  The last time I saw it, it was about 16,000.  It was very

25  little.

1    Q.   Very little.  So what we can agree, then, is that the

2    amount of money in the account is very little; correct?

3    A.   That's correct.

4    Q.   Certainly less than the $60,000 that is on page 3 of this

5    report?  $57,000?

6    A.   Yes.  You're talking about from November?

7    Q.   Yes.

8    A.   Yes, from November it's changed.  It changes constantly.

9    Q.   But notwithstanding your perception of the fluctuation of

10   the account, we can agree a very small number exists in that

11   account now; is that correct?

12   A.   Yes, because it's been stripped, yes.

13   Q.   Your opinion notwithstanding.  What I would like to know

14   is for you to confirm the date that Securix Mississippi was no

15   longer able to conduct business in Mississippi.

16   A.   I don't know the exact date.  It was late August when the

17   Department of Public Safety issued a declaration that

18   everything be shut down.

19   Q.   Again, let's find the common ground we have here.  We have

20   an entity that has very little in the bank account, yes?

21   A.   Yes.

22   Q.   And that can no longer do business in the State of

23   Mississippi, yes?

24   A.   No.  You have continued to do business in the State of

25   Mississippi.

1    Q.  Let me rearticulate just in case you didn't hear me.  You

2    have confirmed, you and I agree, that this entity has not been

3    able to do business in the State of Mississippi since August;

4    right, yes or no?

5    A.  I disagree with you.  It could not legally do so because

6    of the conduct of QJR.

7    Q.  We'll have to agree to disagree on that.  But we can at

8    least agree that the entity has not been fulfilling the scope

9    of these municipal contracts since August; is that right?

10   A.  No, it is not.  QJR continued to operate with these

11   agencies.  We were not allowed to speak to the agencies or

12   inform them there's no insurance, no coverage, no nothing for

13   them.  They did this in violation of what Department of Public

14   Safety said.

15   Q.  So your position is the entity -- let me ask it another

16   way.  Can this entity, then, generate revenue based on the

17   program as a result of being shut down as you represented in

18   August?

19   A.  Not after DPS -- not legally after DPS -- their comment

20   was, we have been told, all the money has to be returned to the

21   violaters.

22   Q.  So is it your position that this entity continues to

23   generate revenue?

24   A.  Yes, you are continuing to collect revenue now.

25   Q.  But there's very little in the account?

1    A.   Very little.

2    Q.   So what your position is, legally it's not supposed to

3    have conducted business since August; correct, yes or no?

4    A.   That's correct.

5    Q.   Very little exists in the account as of the last 48 hours;

6    correct?

7    A.   That's correct.

8    Q.   Then how do you apply a value to a company that cannot

9    legally do business and has no money in the account where that

10   value is in excess of some number north of $75,000?

11   A.   Part of it is because Josh, in January, we can provide you

12   the document, estimated that the company would break even by

13   February.   The company should've made a great deal of money.

14   If it had not been paying other people's bills, it would've

15   made a great deal of money.   I think the projection is very

16   obvious.

17   Q.   Wouldn't it also be true that the company could've

18   continued to generate revenue but for your sabotage of the

19   organization?

20   A.   There's been no sabotage.   There's been no defamation.   My

21   responsibility to the Department of Public Safety, because that

22   contract was with us, we asked many times for proof that it was

23   being paid.   They were not being paid.   DPS is not happy with

24   QJR.

25   Q.   I am glad that that is your opinion.   But isn't it true

1    that it's Securix, LLC that owes money to DPS?

2    A.   No, it is not because what happened was QJR then

3    obligated -- Quinton made the obligation that QJR would pay

4    because QJR controls all the money, we do not?

5    Q.   And that's in the contract somewhere?

6    A.   We have it as an email from Quinton, yes.

7    Q.   Well, for purposes of today, what it sounds like we can

8    agree is that this entity is no longer legally allowed to do

9    business, is how you phrased it; it has no money in the

10   account; and you have had unrestricted access to the bank

11   account for the entirety of the sort of relevant scope of time,

12   all three of those things are correct; right?

13   A.   No, they are not.

14   Q.   Why?

15   A.   Because for the first several months we had no access to

16   the bank account at all.  And even now, these numbers are often

17   bulk numbers.  As you can see, and it's very obvious, there's

18   many inaccuracies with this statement --

19   Q.   I don't think that's very obvious at all.

20   A.   I do.

21   Q.   In any event, I don't know that we have to get into

22   hashing out your opinions here when we can at least agree that

23   there's very little money in the account, you have not been

24   denied access, at least over the last prolonged period of time,

25   and this entity is not able to conduct business legally, as you

1   phrase it, in the State of Mississippi, all of those things are

2   true; correct?

3   A.  Except that Mississippi, Securix Mississippi is continuing

4   to conduct business.  Your net site talks about operations in

5   other states even.  So clearly -- and you have all these people

6   working.  So they're doing something; I suspect that it's for

7   other business purposes.

8   Q.  But we have confirmed, that's just your suspicion.  You

9   have no proof of that; correct?

10   A.  No. I am sorry.  Your own net site says you are doing

11   this.

12   Q.  Okay.  I am not doing anything, I am just the lawyer, I am

13   just here asking the questions.  In any event, I do think we

14   have reached an agreement on the key facts here, which is we

15   are dealing with an entity that has no assets and that cannot

16   legally conduct business in the State of Mississippi.  And

17   while you have purported to be frozen out of, you know, certain

18   aspects, you have at least had access to the bank accounts for

19   the last six months; correct?

20   A.  Yes, correct.

21   Q.  Thanks.

22          **MS. WRIGLEY:**  That's all I have, Judge.

23          **THE COURT:**  Mr. Jordan?

24                   **REDIRECT EXAMINATION**

25   **BY MR. JORDAN:**

1  Q.  Mr. Miller, has any of your testimony changed your opinion

2  about how much Securix Mississippi has received and how much

3  that sheet says that they have received?

4  A.  Absolutely not.

5  Q.  And has it changed your opinion about the other

6  inconsistencies that you have already testified to?

7  A.  No, sir.  And I am seeing more of them now, which I would

8  like to address, but no, no changes.

9  Q.  Tell me the other ones.

10      **MS. WRIGLEY:**  Objection, Your Honor.  This is outside

11  the scope of cross.

12      **THE COURT:**  Be more specific, Ms. Wrigley.

13      **MS. WRIGLEY:**  He is now being asked to identify

14  additional discrepancies, and that's not a follow-up to the

15  cross-examination, that's now new testimony.

16      **THE COURT:**  Mr. Jordan?

17      **MR. JORDAN:**  His testimony was now he sees additional

18  inconsistencies.  And the fact that we got this, essentially

19  ambushed with this document, that now he sees another one after

20  reviewing it for 20 minutes, I think it would arguably at least

21  be fair.

22      **MS. WRIGLEY:**  I'd like to just add that this

23  characterization that this was some like diabolical ambush is

24  consistent with -- is not consistent with the reality, in that

25  I also received the accounting today, so I shared it, like I

1    mentioned I would in the reply, as quickly as I had it.

2              MR. JORDAN:  I am not blaming opposing counsel.

3              THE COURT:  Okay.  If we're just pointing out another

4    alleged discrepancy, the objection is overruled.  I can take

5    that into consideration as I see fit, so the objection is

6    overruled.

7              THE WITNESS:  Just to answer your question very

8    quickly, you have got staff members that are working that are

9    being paid, several of them, Nicky, Tina, Pat, Tracy, they're

10   not even on here, they are being paid by Securix Mississippi.

11   This fundamentally is exceptionally inaccurate.

12   BY MR. JORDAN:

13   Q.  And you're referring to the Exhibit 1 that you are

14   holding?

15   A.  Yes, sir, I am.

16             MR. JORDAN:  Thank you, Your Honor.  That's all I

17   have.

18             THE COURT:  You may step down.

19        Mr. Jordan, any other evidence?

20             MR. JORDAN:  Your Honor, I don't have anything

21   further.  We rest.

22             THE COURT:  You rest?

23             MR. JORDAN:  We don't have anything further.

24             THE COURT:  Any other argument?

25             MR. JORDAN:  No, sir, unless -- you said you didn't

1    want me to finish with the waiver argument, so I just abandoned

2    it.

3              **THE COURT:**  Yes, I know what you mean.

4         Ms. Wrigley?

5              **MS. WRIGLEY:**  Thank you, Judge.

6         The record reflected previously as a result of the

7    briefing and oral argument before this Court already, but

8    Mr. Miller's testimony further illustrates that we have a

9    defunct entity that can't legally do business in the State of

10   Mississippi, that while there may have been receipts at some

11   level, there are also disbursements.  He may have a personal

12   opinion about the discrepancies and inaccuracies, but

13   ultimately this is a report, signed by an accountant, none of

14   -- perhaps Your Honor's background is in accounting, but nobody

15   in here is a professional accountant.  The best we can rely on

16   is what was prepared by the actual accountant, and it shows a

17   cash balance, as of about 60 days ago, below $60,000.  As

18   Mr. Miller testified, that amount in the bank account as of

19   recently is very little.  So to the extent we were valuing the

20   business based on its net profits, the business is functionally

21   insolvent.  It can't continue to legally, in defendant Miller's

22   words, generate revenue.

23        So it is difficult for me to understand, and I would

24   submit that defendants are therefore unable, with summary

25   judgment style evidence, summary judgment level evidence,

1   demonstrate that this entity has a value that allows defendants

2   to meet their burden to establish that the object of the

3   litigation exceeds $75,000.

4           **THE COURT:**  But it is this, plus the other alleged

5   damages.

6           **MS. WRIGLEY:**  Correct.  But even if you aggregated

7   those things, if we're doing this on a cash basis and it's the

8   amount of cash that's sitting in the bank account, then that's

9   $16,000.  And I admit that I don't publicly do math often, but

10  I think when you add that to the debt allegedly owed to QJR,

11  then we're still far below the threshold.

12          To address Mr. Jordan's point about the value of an

13  injunction, I think Mr. Jordan is conflating the ability to

14  obtain an injunction and stop defendant Miller from engaging in

15  the misconduct that we contend that he has engaged in, and the

16  defamation claim, which to the extent that is a claim that can

17  even be brought in chancery court, should we find ourselves

18  back there, those are sort of separate and distinct.  The

19  injunction is saying, Mr. Miller, please stop violating the

20  order that is in place, please stop engaging in this kind of

21  conduct.  It doesn't necessarily carry damages with it, unless,

22  of course, he violates an order on the injunction, in which

23  case those are not damages, those are sanctions and that should

24  not be calculated as part of the amount in controversy.

25          What we have here, ultimately, is a deteriorating entity

1    for which there is no evidence of any assets.  To the extent

2    there's IP assets, that was pursuant to a licensing agreement

3    as the defendants have testified and briefed, so it's not like

4    Securix Mississippi owns some fancy proprietary technology.  It

5    is a deteriorating entity where the economic reality is it

6    cannot generate revenue.  If there is some argument of

7    mismanagement of funds or diversion, those are arguments that

8    are really not germane to the jurisdictional analysis.  We're

9    looking at the value of the entity, in addition to the other

10   things as Your Honor pointed out.  And this entity, frankly,

11   has no value, and the parties don't seem to have a dispute on

12   that.

13        To close one loop from earlier, I reviewed, as best I

14   could in trying to pay attention to everything else, I don't

15   see an attorney's fee provision in the operating agreement.  So

16   that would either be -- it would at least be non-contractual to

17   the extent attorneys' fees would even be available.

18        Let me look at my notes to make sure I haven't left

19   anything out.

20        I think otherwise, Your Honor has made the other points

21   that it's QJR, not the individual members.  If they have a

22   defamation claim against Mr. Miller, then they're not asserting

23   it here, that is something they're evaluating as whether it

24   should be something that should be asserted in a separate cause

25   of action, they are parties to this cause of action.

1          And unless your Honor has questions that I can answer,

2     which I would be happy to do, then we rest on our motions to

3     remand.

4               THE COURT:  Mr. Jordan, do you have something else to

5     add?

6               MR. JORDAN:  I do, Your Honor.  Based on Mr. Miller's

7     testimony, if you just look at a few items on page 35 and 36,

8     which is the summary of cost analysis, and you only look at

9     what Securix, LLC has been paid on page 36, Mr. Miller's

10    testimony of his position in the company and knowledge of

11    receipt of money was that they received a maximum of $60,000,

12    plus 15,000, so a maximum of $75,000, and no more.  Here

13    there's an accounting --

14              THE COURT:  That Securix, LLC received that?

15              MR. JORDAN:  That's right.  And I am talking about

16    the line item that is solely for Securix, LLC on page 36.

17              THE COURT:  Okay.

18              MR. JORDAN:  So that's approximately 171,000.  And I

19    don't have my phone here with me, so -- sorry.  Go ahead, Your

20    Honor.

21              THE COURT:  I know where you are going with that, but

22    I still have to value a business.  So is there any evidence

23    that that $171,000 is an asset of Securix Mississippi, LLC's as

24    of now or as of December when you removed the case?

25              MR. JORDAN:  Well, what they are claiming as of

1    November, that this payment was made.  Mr. Miller testified the

2    payment was, in fact, not made --

3            **THE COURT:**  Well, they are claiming that those

4    payments were made sometime between November 27th of 2023

5    through November 30th of 2024.

6            **MR. JORDAN:**  Correct.  And Mr. Miller specifically is

7    saying that payment was not made, only 75 maximum has been

8    received, leaving 171 approximately thousand dollars at issue.

9            **THE COURT:**  So where is that money?

10           **MR. JORDAN:**  I wish I knew where that money was.

11           **THE COURT:**  If Securix Mississippi, LLC doesn't have

12   the money, then that's not -- that's not part of the value of

13   Securix Mississippi, LLC.  That's a lawsuit, potentially,

14   against someone, maybe.  You see what I am saying?  If you get

15   there and Securix, LLC says, we are entitled to money, and

16   we're entitled to 100 and whatever thousand dollars.

17   Potentially, I don't know.  Do you see what I am saying?

18           **MR. JORDAN:**  I do.  I guess I would argue that they

19   are claiming with this cost report, or in Exhibit 1, that they

20   had that money, and they are claiming they paid it to Securix

21   Mississippi.  And we're saying we didn't receive it, at least

22   $171,000 of it.  Therefore, $171,000 is at issue.

23           The same argument would be applied to the Mark Dunston

24   cost where there's a $10,000 discrepancy that he testified to.

25   So that's 181,000 and only two entries that are at issue.

1          **THE COURT:**  The discrepancy with Mark Dunston is, I

2    think, the allegation that Mark Dunston should've never

3    received any money.

4          **MR. JORDAN:**  I remember him saying that he received

5    48,000, and he is certain of that, and not 38,000.

6          **THE COURT:**  So Securix, LLC paid Mark Dunston more

7    than is on the sheet?

8          **MR. JORDAN:**  They paid -- per Mr. Miller's testimony,

9    they paid him $10,000 more.

10          **THE COURT:**  More than what this says?

11          **MR. JORDAN:**  Yes, sir.

12          **THE COURT:**  So that wouldn't be $10,000 that Securix

13    Mississippi LLC has?  See what I am saying?  I am trying to

14    count up the assets of Securix Mississippi, LLC to see if it's

15    a company worth $75,000.

16          **MR. JORDAN:**  If the company is worth $75,000 or isn't

17    worth $75,000, but you can clearly show that they had the

18    $75,000, or 180- or 90- out of their own sort of -- their own

19    fault, how does that not go to the cost of the business, or the

20    accounting of the --

21          **THE COURT:**  It does go to an accounting, potentially.

22    It goes to maybe liability that could be owed to members,

23    potentially, in a counterclaim or otherwise, but it doesn't

24    necessarily go to the value of the business presently or at the

25    time of removal.

1    **MR. JORDAN:**  This is their accounting, and this is

2    the value that they said they gave to Securix.

3    **THE COURT:**  Right, well it's the cash that was on

4    hand.

5    **MR. JORDAN:**  Right.

6    **THE COURT:**  And it's the cash that was disbursed and

7    received over the course of a year.

8    **MR. JORDAN:**  Your Honor, that's what we have.  We

9    don't have anything further.

10    **THE COURT:**  Okay.

11    **MS. WRIGLEY:**  Your Honor --

12    **THE COURT:**  Ms. Wrigley?

13    **MS. WRIGLEY:**  May I just make --

14    **THE COURT:**  It is your motion, so you can close.

15    **MS. WRIGLEY:**  Thank you so much, Your Honor.

16    Mr. Miller has offered his opinion, his personal belief.  He

17    has not offered any evidence that would discredit the document

18    that an actual accountant has prepared.  But ultimately, I

19    think it's a red herring, Judge, and here is why.  Mr. Miller

20    acknowledges that the cash that this business holds is very

21    little, he surmised $16,000.  I believe it's probably less than

22    that, but I don't think it matters because it's not -- it's not

23    debated how much money the entity has.

24       Now, he has opinions on where it went, whether it was some

25    sort of fraudulent disbursement or mismanagement of funds, but

1  as you have indicated, that goes to liability.  That doesn't go

2  to the current valuation of an entity that can no longer

3  conduct business legally in the State of Mississippi.  And if

4  we're relying on his memory in an effort to discount what

5  accountants prepared in looking at cash in, cash out, Judge, I

6  can't remember what I had for breakfast yesterday, let alone

7  the amount of money that some person may have been paid over

8  some 12-month period.

9        Ultimately, I don't think it matters.  We are all in

10  agreement that the cash on hand is very little or close to

11  nothing.  And as a result, it's hard to understand how a

12  business that can't do business in the State of Mississippi,

13  has no money, has a valuation that even gets us to the

14  threshold even when we aggregate the other potential damages.

15  That is all.  Thank you, Judge.

16        **THE COURT:**  Okay.  I want y'all to stick around for a

17  little bit.  I am going to look at some issues.  I may rule

18  from the bench today.  So we will let you know shortly if

19  that's going to happen.  And by shortly, I mean within the next

20  15 to 20 minutes we'll let you know so you are not hanging

21  around.  I know y'all want a ruling quickly, so I may rule from

22  the bench today.  So we'll let you know in the next 15 or 20

23  minutes if I am going to rule from the bench.  And court will

24  stand in recess until then.

25        **(RECESS TAKEN AT 5:00 P.M. UNTIL 5:31 P.M.).**

1          **THE COURT:**  Before the Court is plaintiff's motion to

2     remand.  I am going to rule from the bench this evening.  The

3     parties have requested that this proceeding be expedited, and I

4     am familiar with the case at this point in time and it would be

5     better for me to go ahead and just rule from the bench today as

6     opposed to putting this opinion in the queue and you all

7     waiting a few weeks for that opinion to get drafted and out the

8     door.  So I am going to rule from the bench this evening.

9          I do find that plaintiff's motion to remand is granted.

10    Now, why am I granting plaintiff's motion to remand?  Well, a

11    lot of it, quite frankly, comes down to the burden of proof.

12    In this case, in this situation the defendants have the burden

13    of proof to prove by a preponderance of the evidence that the

14    amount in controversy has been met.  I know litigants sometimes

15    may think that's unfair, that you can win or lose an argument

16    or even a case based off of the burden of proof, but it is a

17    fundamental aspect of our justice system.

18         In this situation, it is just abundantly clear that the

19    law requires that the defendants have the burden of proof to

20    prove by a preponderance of the evidence the amount in

21    controversy in this case exceeds $75,000.

22         Furthermore, case law is abundantly clear that whenever

23    there is a doubt, whenever there is a doubt in these types of

24    situations over questions of jurisdiction, doubts should be

25    resolved in favor of remand.  That's what the law says, that's

1    what the law requires.

2        I do think this is, at times, a close call.  I do think it

3    gets to a close call at times, but doubts are resolved in favor

4    of remand, that's what the law says.

5        And so let's first start off with how I am reaching my

6    decision, specifically that the defendants have not met their

7    burden of proof to demonstrate by a preponderance of the

8    evidence the amount in controversy in this case exceeded

9    $75,000 at the time of removal.  It's also an important point.

10   That is the crucial date, that's what the law says, at the time

11   of removal.

12       The first thing to look at is the value of Securix

13   Mississippi, LLC.  Now, the parties are in agreement that

14   whenever a party, such as QJR, LLC is seeking dissolution or

15   injunctive relief or declaratory relief and it involves the

16   valuation of an entity, that you look at the valuation of that

17   object, the object of the litigation.  In this case, that's the

18   valuation of entity.

19       I was doing research in advance of today's hearing, and in

20   my view the law says that since we have two dual owners of this

21   business, that is Securix Mississippi, LLC, and that is the

22   entity where the plaintiff QJR, LLC is seeking to dissolve it

23   then I am then to look at the 50 percent value that is

24   assigned.  So in other words, I look at the value of Securix

25   Mississippi, LLC, and then I cut it in half.

1    I am going to give the parties a couple of cases, though,

2    because I am starting to cite to some law, and I want to give

3    the parties the benefit of some law that I have already cited

4    to and that I am getting to.

5    So first, in *Manguno versus Prudential Property and*

6    *Casualty Insurance Company*, that can be found at 276 F.3d 720

7    at page 723, a Fifth Circuit opinion from 2002.  The Fifth

8    Circuit is quoted as saying, to determine whether jurisdiction

9    is present for removal, we consider the claims in the state

10   court petition as they existed at the time of removal.

11   Additionally, in *Gebbia versus Wal-Mart Stores,*

12   *Incorporated*, 233 F.3d 880 at page 883, a Fifth Circuit case

13   from 2002.  It states, the jurisdictional facts that support

14   removal must be judged at the time of the removal.

15   Additionally, a couple of cases that I found to be

16   persuasive as to how you look at the actual ownership interest

17   in determining the value of the object include *Niemiec versus*

18   *Ioselev*, that's N-I-E-M-I-E-C versus I-O-S-E-L-E-V, that can be

19   found at 1999 Westlaw 744038, a district court opinion from the

20   United States District Court of the Eastern District of

21   Louisiana, handed down on September 22nd of 1999.

22   Additionally, *Perlick versus Hermon*, that's P-E-R-L-I-C-K

23   versus Hermon, that can be found at 2018 Westlaw 4355215.  And

24   that was a case from the Eastern District of Kentucky, handed

25   down on September 12 of 2018.

1          Additionally, in *Martinez versus Pfizer*, Incorporated,

2     it's a case handed down in the Western District of Texas in

3     2019.  It's a reported decision 288 Fed. Supp. 3d, 748 at page

4     762.  And I am quoting, that case says, the amount in

5     controversy is determined at the time of removal.

6          The time of removal in this case was December 20th of

7     2024.  So what do we know about the value of Securix

8     Mississippi, LLC as of December 20th, 2024?  And the frank

9     answer is, not much.  I don't know much.  The defendants

10    certainly don't know much.  And I understand that can be

11    frustrating to the defendants because they believe, well, the

12    reason they don't know much about the value is because they

13    were trying to get more of an understanding about the value

14    leading up to December 20th, 2024.  And so they didn't know a

15    lot about the value on December 20th of 2024.  But we are now

16    over a month from that date, and the basis of the removal, in

17    terms of the value that was put forth in the notice of removal,

18    it said the value of the disputed assets is estimated to be in

19    excess of $1 million.  And what is clear to me today is that

20    statement was really just based off of an understanding that

21    receipts had come in the door for Securix Mississippi, LLC over

22    the course of a one-year period in excess of $1 million.  But

23    receipts is not value because companies also have liabilities.

24         And so again, it is the defendant's burden to prove by a

25    preponderance of the evidence the value of Securix Mississippi,

1   LLC as of December 20th, 2024.

2       I also note that defendants did not and have not moved for

3   or advanced arguments for jurisdictional discovery, which is a

4   tool that is available.  I understand for strategic reasons

5   defendants may have said that does not make sense, and they

6   felt strong enough on their briefs and strong enough under the

7   evidence that they did not want to do that to further delay

8   these proceedings.  I understand for strategic reasons why the

9   defendants may not have chosen to seek jurisdictional

10  discovery, but that was a tool that was available in the

11  toolkit, and the defendants did not seek jurisdictional

12  discovery over the amount in controversy, did not seek

13  depositions, did not seek written discovery.

14      And so the defendant's arguments really as to the value of

15  Securix Mississippi, LLC kind of comes down to this, at one

16  point in time Securix Mississippi, LLC had a lot of money

17  coming in, so surely the value of the business as of

18  December 20th, 2024, was over $75,000, or at least in

19  conjunction with the other damages that are being sought.  And

20  especially since a lot of those receipts came in earlier in

21  2024, in the spring, in the summer, in the fall even, surely

22  that gets the defendants there, that's kind of one bucket of

23  the arguments that the defendants are presenting with regard to

24  amount in controversy concerning the value of Securix

25  Mississippi, LLC.

1        Another one is that there is potentially some wrongdoing

2   or maybe some misappropriation that was inadvertent, or at the

3   very least there have been bills that should've been paid or

4   should not have been paid, and if either one occurred then the

5   value of Securix Mississippi, LLC would be higher than it is

6   today.  But again, these arguments go to speculation to me.  I

7   cannot put a firm foundational evidentiary basis for a value of

8   what Securix Mississippi, LLC was, at least from a

9   preponderance of the evidence perspective.  Again, that's just

10  more likely than not, but I can't really even firmly put that

11  basis on there as to what that value was.

12       Receipts that Securix Mississippi, LLC had earlier in the

13  year are certainly not evidence of value as of December 20th,

14  2024.  Additionally, it is undisputed that Securix Mississippi,

15  LLC could not legally operate in the State of Mississippi after

16  August of 2024.  And QJR, LLC has presented this accounting of

17  cash receipts.  This was plaintiff's Exhibit 1 for purposes of

18  today's hearing.  And I have reviewed this accounting.  The

19  defendants have been given an opportunity to review it, and

20  defendants have been given an opportunity to give testimony

21  about this.

22       I understand that defendants also requested a post reply

23  brief to address this further, and I am denying that request

24  for a post reply brief because that is unnecessary, in my view,

25  in light of the defendants being given an opportunity to review

1    it, given an opportunity to present evidence and testimony, and

2    I am not aware of what further a post reply brief would

3    undercover.  And again, defendants have not requested

4    jurisdictional discovery.

5        So I will say that this accounting does comport with what

6    is undisputed from the parties, and that is that revenue has

7    fallen off a cliff since August of 2024 for Securix

8    Mississippi, LLC.  By way of example, if you look at the

9    deposits, the total February deposits, February 24th, 2024

10   deposits, that can be found on page 5, those deposits were over

11   $209,000; in March, over $219,000; in April, over $213,000.

12   But then what you start seeing is those deposits and the

13   revenue fall off a cliff for Securix Mississippi, LLC.

14       By way of example, August 24th, which is the month,

15   allegedly, it seems like it's undisputed Securix Mississippi,

16   LLC was somehow not allowed to legally operate in the State of

17   Mississippi anymore, those deposits came in at $106,341.39;

18   then in September, $56,968.26; then in October, $20,081.38; and

19   then finally, in November, $8,207.79.  That is a massive

20   difference than where the business was earlier in the year.

21       And so even though the Securix Mississippi, LLC report

22   that's Plaintiff's Exhibit 1 does state an ending cash balance

23   of $57,065.46 as of November 30th, 2024, and even though that

24   makes sense that a company like Securix Mississippi, LLC could

25   have accounts receivables that keep getting paid after the

1    fact, after it's shut down, I mean businesses, obviously I have

2    seen that when businesses are dissolved or, not dissolved, but

3    when businesses stop operating you can still have receipts

4    coming in through accounts receivable because a city or a

5    business that's paying Securix Mississippi, LLC may be on a

6    30-day 60-day, 90-day cycle, it makes sense there could be

7    receipts coming in after August.  And it also makes sense that

8    it should be falling off a cliff, which is what has happened.

9         And so we're now in November of 2024 and Securix

10   Mississippi, LLC is really generating virtually no revenue

11   anymore.  That brings us to the date of the removal, which is

12   December 20th of 2024.  And while it seems likely, certainly,

13   based off of the testimony of Mr. Miller, that Securix

14   Mississippi, LLC has had some cash in the bank account since

15   November 30th of 2024, maybe as much as $16,000, 50 percent of

16   $60,000 -- of $16,000 is not going to obviously get the

17   defendants anywhere close to exceeding the amount in

18   controversy.  Of course, 50 percent of $16,000 is $8,000.

19        And the defendants have not put forward in front of me,

20   outside of cash, outside of cash, other evidence of assets that

21   I can determine a value of Securix Mississippi, LLC.  For

22   example, in corporate litigation, especially corporate

23   litigation like this, often there's a heavy dispute over

24   intellectual property and the value of intellectual property.

25   But here, there is no allegation that Securix Mississippi, LLC

1    is the owner of any specific type of intellectual property that

2    has a specific value on the market.

3        Additionally, there's no allegation that Securix

4    Mississippi, LLC owns a piece of real estate free and clear or

5    just has more value in that asset, that real estate that is

6    over and above what is owed on that real estate.  None of that

7    exists for me to be able to make a determination, outside of

8    some cash that likely was in the bank account on December 20th

9    of 2024, but it's unknown to me how much that was, I can't make

10   any type of asset valuation for me to know any more than just

11   there was some cash in the bank account, likely, on

12   December 20th of 2024.  I can't even tell you if it's likely

13   that it was $16,000, I can't tell you if it was likely less,

14   and I certainly can't tell you if it was more.  I just don't

15   know.  And defendants don't know.  And that makes sense.

16       While defendants have apparently had some access to bank

17   account information, they have not had access to all

18   information.  And again, that may be frustrating to the

19   defendants because they say, well, the plaintiff may be able to

20   obtain what they are seeking in this case because they can hide

21   behind the burden of proof.  And I don't find that's

22   necessarily the case, but it doesn't change the fact that the

23   burden of proof matters.  It matters in all litigation, it

24   matters in jury trials, it matters in criminal trials, criminal

25   jury trials, civil jury trials, and it certainly matters in

1    these types of circumstances as well.

2    But moving on down to the items that I have to kind of

3    aggregate to determine whether there is an amount in

4    controversy that has been met here.  And I will specifically

5    find that at best case scenario for the defendants is there's a

6    valuation of 50 percent ownership of $8,000, but that may not

7    even be likely because we just don't know how much was in the

8    bank account or really in the month of December.  We don't

9    know.  I think that's probably fair, somewhere around $8,000,

10   if you look at the bank account had $16,000, but that's not

11   anywhere close to amount in controversy.

12   Then you look at the other items of damage.  One of them

13   was this alleged breach of contract for damage, which was

14   paragraph 3 of the prayer for relief.  Now, that was not a

15   specific cause of action, but it was kind of thrown into the

16   prayer for relief.

17   I will point out that all parties have kind of focused on

18   the judicial dissolution.  The title of the complaint says it's

19   a complaint for judicial dissolution.  The defendants, in their

20   notice of removal, did not mention defamation, did not mention

21   compensatory damages, did not mention punitive damages as other

22   items of bases for the amount in controversy requirement to be

23   met.  Instead, the defendant solely focused on the value of

24   disputed assets.  And I have found that their valuation is not

25   persuasive and not backed up by evidence.

1            So I do want to put this paragraph 3 of the complaint

2       where it seeks this breach of contract remedy under that

3       context because there are no specifics by and large as to what

4       those damages, not even by and large, there are no specifics

5       about what those damages could be in the complaint.  It is not

6       facially apparent what those damages could be or what any

7       damages could be from the complaint.  And even still, though,

8       even if that is a viable cause of action, that you can bring a

9       cause of action solely in the prayer for relief, which seems

10      potentially contrary to *Twombly* and *Iqbal* in federal court

11      jurisprudence.  But even if you could do that, bring a cause of

12      action solely in the prayer for relief, again there's no

13      evidence of what those damages are in the complaint.  And the

14      only thing we have heard is that the plaintiff somewhat

15      conceding that there is this potential debt out there, or there

16      is this debt out there, that they are seeking it, and that the

17      damages may be less than $40,000.  And the defendant's response

18      to that is not through evidence of saying, well, we actually

19      have evidence that that alleged debt is $85,000 or $120,000 or

20      even $25,000.  Instead, the defendant's position was, well, we

21      just think you should take that valuation of $40,000 and use

22      that as your starting point.  But again, it is the defendant's

23      burden to prove by a preponderance of the evidence what the

24      amount in controversy is at the time of removal.  And while it

25      certainly seems likely that if Ms. Wrigley is willing to

1    concede that the number is somewhere less than $40,000, that

2    that number is probably closer to $40,000 I still don't know

3    what that number is.  I don't know, is it $30,000, is it

4    $27,000, $24,000?  Again, this gets back to the burden of proof

5    and it's a lot of unknowns.  And based off of those unknowns, I

6    cannot add up that item of damage, plus the 50 percent value of

7    Securix Mississippi, LLC, and get anywhere close to $75,000 or

8    in excess of $75,000.

9        And then that brings us to the defamation claims.  There's

10   a defamation claim that QJR has brought against the defendants,

11   and that defamation claim seeks compensatory damages, seeks

12   attorneys' fees, costs and punitive damages.  But that

13   defamation claim, quite frankly, lacks specifics that allow me

14   to really fully understand the viability of that claim, but

15   more specifically the amount of damages that one may be

16   entitled to.

17       Defamation claims are often very subjective, if it's

18   purely based off of reputation, if it's purely based off of

19   reputation.  And the defendants have not put evidence in of

20   QJR's reputation and how some of these defamation claims may

21   actually impact QJR's reputation.  In fact, I don't even know

22   what the statements are themselves that are so allegedly

23   defamatory.  And there's no specific allegation in the

24   complaint of a specific contract that QJR, LLC may have lost

25   because of these alleged statements or -- and the defendants

1   are not putting forward any evidence that QJR, LLC may have

2   lost a certain contract because of these alleged comments.

3   Instead, we're just left with this subjective some type of

4   reputational harm of QJR, LLC.  And that's unclear to me, and

5   that's entirely unclear to me how I can value that without

6   knowing what the reputation of QJR, LLC is, without knowing how

7   that really could harm QJR, LLC, without knowing what the

8   statements are.  And there's no allegations of a specific

9   contract that was lost.

10      I understand there's some conclusory allegations in the

11  complaint about these statements harming QJR more than just

12  reputationally and potentially harming its business, but,

13  again, these are conclusory allegations that do not fit into a

14  realm for me to make a determination by a preponderance of the

15  evidence, really, what the value of these defamation claims

16  are.

17      I will note, though, that I did take into consideration

18  this declaration from Josh Gregory.  I did rely on it for

19  judicial estoppel purposes.  And without this declaration,

20  plaintiff may have not succeeded today, may very well have not

21  succeeded today.  And I will find for judicial estoppel

22  purposes that I have relied on that declaration.

23      And so what, in my view, while this may be an issue for a

24  state court down the road, I do not believe that plaintiff can

25  be allowed to ever seek damages over and above $75,000 in this

1    case, period, end of story.  That's what the plaintiff has

2    stated in their declaration, in its declaration.  Plaintiff has

3    stated it is not seeking more than $75,000 in compensatory

4    damages and is not seeking more -- and that includes

5    compensatory and punitive damages, and is not willing to

6    accept, which also some cases talk about that language needs to

7    be in a declaration, that's not enough just to say you're not

8    seeking it, you also have to be willing to not accept it.

9    Because some courts can award damages even if you're not

10   seeking it.  And I note from the plaintiff's declaration, they

11   use that language, they say, not only are we not going to seek

12   it, Josh Gregory said QJR is not -- is also not going to accept

13   more than $75,000 in compensatory or punitive damages.  I did

14   rely on that.  And I do find that to be very important.

15       I do want to pull that up just so I have the specific

16   language that I am relying on.  Joshua Gregory states that he

17   is the manager of QJR, LLC, that he is fully authorized to make

18   the declaration on its behalf, he has personal knowledge of all

19   the facts set forth in the declaration, and that the plaintiff

20   QJR, LLC does not seek and will not accept damages exceeding

21   $75,000 in connection with this litigation.  This limitation

22   applies to all compensatory and punitive damages, costs and

23   fees referenced in plaintiff's complaint.  Instead, the

24   declaration goes on to state that primary relief sought by

25   plaintiff is equitable in nature and is injunctive relief.

1       Now, it goes on to state that the limitation does not

2  apply, in Mr. Gregory's opinion, to sanctions or other remedies

3  the Court may impose based on defendant Jonathan Miller's

4  conduct, including violations of court orders.  And in my

5  research, I do -- it is my view that I believe that's accurate,

6  that in the event some judge was to sanction for a violation of

7  a court order, that's different than compensatory and punitive

8  damages for amount in controversy purposes, that's a different

9  thing.

10      Now, there would have to be a very clear line of

11  demarcation of the behavior.  It couldn't be pre-lawsuit

12  behavior, it would have to be post-lawsuit behavior that

13  violates a court order that would justify a sanction.  But I do

14  think that, in my view, this declaration does serve as

15  additional significant justification for my ruling today.

16      I also want to point out that the only way I can reach

17  this declaration is to find that the plaintiff's complaint with

18  regard to the damages is ambiguous as to the amount in

19  controversy, and I make that specific finding.  The plaintiff's

20  complaint is ambiguous as to the amount in controversy.  It's

21  ambiguous as to the value of Securix Mississippi, LLC.  There's

22  no valuation put in there.  It's ambiguous as to that alleged

23  breach of contract potential claim that's in paragraph number 3

24  of the prayer for relief, it's ambiguous as to the compensatory

25  or punitive damages that could be associated with any

1   defamation claims, and it's ambiguous as to attorneys' fees and

2   costs.   There is just -- it's just -- these are very, very

3   subjective types of claims.

4         I further want to point out that, yes, I certainly take

5   into consideration punitive damages for purposes of determining

6   the amount in controversy.   But there has to be a basis for the

7   punitive damages.   And the punitive damages, of course, are

8   limited, constitutionally, in this state and by statute by --

9   they are limited by the valuation of QJR, and they are limited

10  by certain multiple factors of the underlying compensatory

11  damages.   And it's hard for me to put any value on the

12  defamation that would lead to compensatory damages for the

13  defamation.   So it's hard for me to do any type of multiplier

14  of punitive damages on top of compensatory damages when I have

15  an underlying value of a defamation, it's very unclear to me,

16  and the defendant has not met their burden on that.

17        Additionally, I want to address defendants' argument about

18  injunctive relief and there could be damages related to

19  injunctive relief.   Well, I do not find that argument to be

20  persuasive.   Injunctive relief is seeking to enjoin someone

21  from something.   And there's been no specifics in the complaint

22  or in the defendant's evidence that's been put forward in the

23  notice of removal or today's hearing or in the brief in

24  opposition as to what that actually would look like, what that

25  -- what type of conduct is being enjoined and what the harm

1    would be to the defendants.  It seems like the argument is,

2    well, the plaintiff is seeking to enjoin the defendants from

3    defaming the plaintiff in the future.

4        Well, typically, most courts don't provide prospective

5    relief to not violate the law in the future.  They provide

6    relief for past harms, remedies.  So it's hard for me to really

7    see how this would be a claim that would be viable into the

8    future.  But even if it was, it would essentially just be a

9    ruling to not violate the law, which doesn't really have a

10   value.  You shouldn't violate the law anyway.  And, obviously,

11   I am not giving any opinion on whether the defendants have

12   violated the law in any way.  That's not for me to decide.  I

13   am not giving an opinion on whether QJR has violated the law.

14   That's not for me to decide today.

15       But what I am to decide is what the valuations of those

16   things could be.  And just a prospective opinion not to violate

17   the law in the future, I have seen no evidence and no case law

18   put forward by the defendants that would justify that that

19   valuation would somehow exceed $75,000, or in the aggregate,

20   help the defendants get there in terms of the plaintiff's

21   damages.

22       Again, I went over this a little bit in the argument

23   portion, but often in amount in controversy cases there's some

24   type of objective measurement to use as a starting point in

25   damages, and that's why I was so focused on the valuation of

1    Securix Mississippi, LLC and what I could actually value at

2    some point in time to really fundamentally have a good starting

3    place for a value in this case.  Almost all of these other

4    types of claims are too speculative or lack the necessary

5    evidentiary basis for me to put virtually any value on.

6         Another example is attorneys' fees and costs.  Attorneys'

7    fees, the parties seem to concede, cannot be recovered by the

8    prevailing party in this case pursuant to any breach of the

9    operating agreement.  Instead, attorneys' fees would only be

10   able to be recovered through some type of tort claim,

11   intentional tort claim, like defamation or maybe through

12   recovering punitive damages.

13        But for the same reasons that I am unable to put a value

14   on damages for defamation, and that the defendants have not met

15   their burden, the defendants have not met their burden to show

16   attorneys' fees and costs that's realistically going to be able

17   to be recovered by the plaintiff in any way, more likely than

18   not, what these attorneys' fees, even the amount would be over

19   the course of this litigation, what that amount would be, and

20   how the plaintiff could actually recover attorney's fees in

21   this case outside of proving punitive damages, potentially, or

22   some type of intentional tort.

23        And so even though attorney's fees and costs are included,

24   that doesn't mean that I'll all of a sudden assign a $50,000

25   number or a $30,000 number to attorneys' fees and costs.  There

1    has to be an evidentiary basis for that, and I do not find that

2    that evidentiary basis has been put forward.

3         As to waiver, I find that it's unnecessary for me to reach

4    the waiver issue because I have already been persuaded by

5    plaintiff's lead argument, which is the amount in controversy

6    argument, that the defendants have not met their burden of

7    proof with regard to amount in controversy.

8         I will point out that I think that defendants had, in all

9    likelihood, the better end of that argument on waiver.  But as

10   long as there is no amount in controversy that can be met in

11   this case through the defendants burden, then I am required to

12   remand this case if I find the defendants have not met their

13   burden.

14        So for all of those reasons, I do grant plaintiff's motion

15   to remand.  An order will be entered tomorrow.  Now, that order

16   is really just going to adopt my findings and conclusions that

17   I made today.  I am not going to be entering a lengthy order

18   that goes through my full analysis in writing.  Instead, again,

19   I find that it is more prudent for the parties to be able to

20   get a ruling expeditiously and one out the door today.

21        Anything else from the defendants?

22             **MR. JORDAN:**  That's all we have, Your Honor.  Thank

23   you.

24             **THE COURT:**  Anything else from the plaintiff?

25             **MS. WRIGLEY:**  No, Your Honor.  Thank you.

1              **THE COURT:**  I appreciate the arguments from counsel

2     today, I did find them to be helpful, and I hope you all have

3     safe travels back.  Court will stand adjourned.

4                          (HEARING CONCLUDED)

5                               – – –

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    CERTIFICATE OF COURT REPORTER

3

4        I, Sherri L. Penny, RPR, FCRR, Official Court Reporter

5   for the United States District Court for the Southern District

6   of Mississippi, appointed pursuant to the provisions of Title

7   28, United States Code, Section 753, do hereby certify that the

8   foregoing is a correct transcript of the proceedings reported

9   by me using the stenotype reporting method in conjunction with

10  computer-aided transcription, and that same is a true and

11  correct transcript to the best of my ability and understanding.

12       I further certify that the transcript fees and format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15

16

17
                   *S/ Sherri L. Penny*
18                 OFFICIAL COURT REPORTER

19

20

21

22

23

24

25